CHARLES G. SCHINKEL AND ALFRED KLINGNER, PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF FAIRVIEW, IN THE COUNTY OF BERGEN.

Argued February 19, 1908—Decided April 16, 1908.

The granting of consent by the common council of a borough to locate a cemetery in such borough, thereby exempting from taxation the lands to be used for such cemetery, when the application for such consent is accompanied by an offer to pay to the borough, for the consent, cash and to grant to it other concessions, is such action as involves the management, regulation, protection and control of the finances of the borough within the meaning of the Borough act, and must be by ordinance.

On *certiorari.*

Before Justices REED, PARKER and VOORHEES.

For the prosecutors, *Peter W. Stagg.*

For the defendant, *J. Emil Walscheid.*

The opinion of the court was delivered by

VOORHEES, J.   This writ brings up for review the action of the common council of the borough of Fairview, in Bergen county, in granting consent, by resolution, to the Fairview Heights Cemetery Association to locate a new cemetery in the borough.

The main reason urged for setting aside the proceedings of the borough council is that it was not competent to grant such consent by resolution, but that an ordinance was necessary.   By the act of 1906 (*Pamph. L., p.* 283), consent of the municipal authorities of the borough is necessary before locating any new cemetery or burying ground.   The position of the prosecutor is that section 8 of "An act to authorize the incorporation of rural cemetery associations and regulating cemeteries," approved April 9th, 1875 (*Gen. Stat., p.* 350), under which the cemetery in question was incorporated, exempts from taxation the lands of such association, and that a like result flows from the general Tax act of 1903 (*Pamph. L., p.* 394), providing that "graveyards not exceeding ten acres of ground, cemeteries and buildings for cemetery use erected thereon" shall be exempt.   *Rosedale Cemetery Association* v. *Linden,* 44 *Vroom* 421.

It appears that the borough has an area of about four hundred and fifty acres; that it already has a cemetery of thirty acres, and that the one sought to be located will contain about sixty-two acres; thus the establishment of the proposed cemetery will remove from taxation about one-seventh, in extent, of the real property located in the borough.   The Borough act (*Pamph. L.* 1897, *p.* 296, § 28) provides that the council of the borough shall have power:

"1. To pass, enforce, alter or repeal ordinances to take effect within the limits of said borough for the following purposes:

To manage, regulate, protect and control the finances and property of the borough."

If the granting of this consent, thereby removing the power of taxation of a large portion of the taxable property of the municipality, is management, regulation, protection or control of the finances, then it is clear that the municipal action must be by ordinance and not by resolution.

Speaking of this section of the Borough act, Vice Chancellor Grey, in *Point Pleasant Electric Light Co.* v. *Bayhead,* 17 *Dick. Ch. Rep.* 296, says: "It must be noted that the Borough act directs that the authority there given shall be exercised by ordinance. Here is an original statutory grant of power coupled with the prescription of a mode in which it shall be exercised. In such cases observation of the prescribed mode is necessary to the exercise of the power."

The application for consent is accompanied by an offer on the part of the promoters of the cemetery to pay to the borough the sum of $20,800, said to be the present assessed valuation of the lands covered by the application, and also to secure for the borough permission from the Fairview Cemetery Company to run its surface water through the cemetery by using the existing system of sewers that the said cemetery has provided for the draining of its property, on condition that the borough secures and protects the cemetery against any and all damages that may occur by reason of any defective, improper or insufficient construction of its surface water sewer system, and also to obtain permission for the borough to locate a sewer through the cemetery to carry off the surface water from the Hackensack turnpike to Bellman's creek, and also to provide, free of charge, to the borough sufficient land, not exceeding one acre, to maintain a septic tank or basin thereon, and finally to convey to the borough the lot for school purposes, which the board of education has been authorized to purchase for $900.

While it is true that the property proposed to be devoted to cemetery purposes is not the property of the borough in the sense that the borough has the title to it, yet while it is used for general purposes and not for cemetery purposes, it is in a sense an asset of the borough and produces an income by way

of taxation. To remove this land, by allowing it to be used for cemetery purposes, from the power of taxation, is to take away from the borough an asset which yields an annual sum to the treasury of the municipality, and it cannot be doubted that the management, regulation, protection and control of the finances may be said to be exercised not only by holding, under the taxing power, the property within the borough, but as well by action which allows such property to be relieved from its liability to respond to the general revenues, and for that reason it seems to us that the control and protection of the finances of the borough are involved in the granting or non-granting of a consent diminishing the amount of the ratables of the municipality.

Nor is the situation different when we consider the proposed offers of compensation to the borough for the granting of the consent. That the borough should barter away its assets for a money consideration and other considerations certainly is a matter of management, regulation, control and protection of the finances.

Whether an equivalent in value is obtained by the borough when a certain sum is paid to it for the giving up of the present and prospective taxable values of a large acreage, is a matter the consideration of which is out of the ordinary course of business of a borough council.

There is a marked difference between an act which is merely incidental to the conduct of the business of a municipality, such as the paying out of moneys in due course, the painting and repairing of borough property and the like, which are constantly recurring, and partake largely of administrative functions and those acts of the council which result in the giving away of an asset, or the diminution of the annual income of the borough, or the weighing of the comparative taxable values, present and future, of lands, and moneys and concessions offered for the lands.

It is not without reason that the legislature guards the latter seemingly fundamental acts by the solemnity of an ordinance with all the publicity and notice which attends the passage of such legislation designed to arrest the attention of the

inhabitants and taxpayers of the municipality in order that they may object if they see fit.

While a resolution may be eminently appropriate for the authorization of the payment of the ordinary expenses and the incurring of bills of like character, the legislature undoubtedly had in mind, by the use of the terms "To manage, regulate, control and protect the finances," those appropriations and expenditures other than those necessarily occurring in ordinary course of business. The latter may be said simply to affect the finances in an indefinite way.

The wording and spirit of section 27 of the act is not opposed to this construction.

For the above reasons the resolution under review must be set aside.